UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO NUNEZ SALGADO,<br><br>   Petitioner,<br><br>  v.<br><br>WILLIAM BARR, *et al.*,<br><br>   Respondents. | Case No. 20-cv-02319-EMC<br><br>**ORDER DEFERRING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER; AND FINDING MOOT RESPONDENTS' MOTION TO STAY**<br><br>Docket Nos. 13, 17 |

  Currently pending before the Court is Petitioner/Plaintiff Armando Nunez Salgado's motion for a temporary restraining order ("TRO"). Mr. Salgado is currently being detained at the Mesa Verde detention center. Mr. Salgado argues that the Court should order his release from Mesa Verde because of the risk of COVID-19. Mr. Salgado also asserts, as an independent basis for release, that he is entitled to relief because his detention has been unduly prolonged. In the alternative, Mr. Salgado contends that he should be given a custody redetermination because of the prolonged detention.

  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DEFERS** in part and **DENIES** in part Mr. Salgado's TRO motion. Because the Court is deferring in part, the government's counter-motion to stay is deemed moot.

## I.  DISCUSSION

A. Legal Standard

  The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Missud v. State of Cal.*, No. C-14-1503 EMC, 2014 U.S.

Dist. LEXIS 73376, at *1 (N.D. Cal. May 28, 2014). The moving party must demonstrate that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of relief; (3) the balance of equity tips in its favor; and (4) the injunction is in the public interest. *See Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

The Ninth Circuit has adopted a sliding scale approach wherein the robustness of the requisite showing on the merits varies with the balance of hardships; temporary injunctive relief may be issued where, e.g., the likelihood of success is such that serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiff's favor. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

B.  COVID-19

To the extent Mr. Salgado asks for a release from detention because of the risk of COVID-19, the Court defers ruling on his motion. As both parties acknowledge, *Zepeda Rivas v. Jennings*, No. C-20-2731 VC (N.D. Cal.) concerns conditions at Mesa Verde, precisely because of the COVID-19 situation. Mr. Salgado concedes that he is part of the provisionally certified class in *Zepeda Rivas*. Because he is a part of that class and because Judge Chhabria is moving forward apace with that lawsuit (both with individual bail applications and the request for a preliminary injunction), this Court will defer acting on this aspect of Mr. Salgado's case pending rulings by Judge Chhabria.

After Judge Chhabria rules on Mr. Salgado's bail application and on the class motion for preliminary injunction, the parties shall file a joint status report.

C.  Prolonged Detention

As indicated above, independent of his COVID-19 argument, Mr. Salgado contends that he should be released because his detention has been unduly prolonged. Alternatively, Mr. Salgado asserts that he is entitled to a custody redetermination because of the prolonged detention.

1.  Relevant Factual Background

The parties largely agree on the following facts relevant to Mr. Salgado's prolonged detention claim.

In 2000, Mr. Salgado was removed from the United States following an aggravated felony conviction finding. In February 2018, "[f]ollowing a series of illegal re-entries, removals and more crimes," Mr. Salgado was arrested and detained, and the government sought to reinstate the 2000 removal order. Resp.'s Supp. Br. at 2; *see also* Pet.'s Supp. Br. at 1. In August 2018, an IJ denied Mr. Salgado release on bond on the basis that he was a flight risk.

In September 2018, an IJ granted Mr. Salgado deferral of removal under the Convention Against Torture. *See* Docket No. 25 (IJ decision). Subsequently, a custody redetermination was held because Mr. Salgado had been granted deferral of removal (*i.e.*, because there were changed circumstances). The IJ ultimately held in December 2018 that Mr. Salgado was still not entitled to release on the ground that he was a flight risk. *See* Docket No. 13-10 (IJ decision).

In February 2019, the BIA overruled the IJ's decision granting deferral of removal. *See* Docket No. 13-7 (BIA decision). The following month, Mr. Salgado appealed the BIA decision to the Ninth Circuit. *See* Docket No. 13-8 (Ninth Circuit docket sheet). In June 2019, the Ninth Circuit granted a stay of removal pending its review. *See* Docket No. 13-8.

In February 2020, after appellate briefing was completed, the Ninth Circuit determined that there would be oral argument for the appeal. *See* Docket No. 13-8. However, two months later, in April 2020, the Ninth Circuit reversed course and determined that the case would be submitted on the briefs and record, without oral argument. *See* Docket No. 13-8.

As indicated by the above, Mr. Salgado has been detained since approximately February 2018. He has had two bond hearings, the last one taking place in December 2018. Thus, since his last bond hearing, Mr. Salgado has been in detention for almost a year and a half. Both parties agree that Mr. Salgado is being detained pursuant to 8 U.S.C. § 1231(a)(6). *See Tejada v. Godfrey*, 954 F.3d 1245, 1248 (9th Cir. 2020) (noting that "we held in *Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2018), that aliens with reinstated removal orders who are placed in withholding-only proceedings are detained pursuant to § 1231(a)(6)").

2. <u>Release</u>

According to Mr. Salgado, he is entitled to release as a constitutional matter because he has been detained since December 2018 at the latest (and February 2018 at the earliest) such that his

2

1  detention has become, in effect, indefinite in nature.  Although Mr. Salgado asserts a
2  constitutional claim, he essentially applies a statutory analysis to his claim.  That is, Mr. Salgado
3  looks to guidance from *Zadvydas v. Davis*, 533 U.S. 678 (12001), where the Supreme Court held
4  that, as a statutory matter, § 1231(a)(6) implicitly limits "an alien's post-removal-period detention
5  to a period reasonably necessary to bring about that alien's removal from the United States."
6  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); *see also Gonzalez v. Barr*, 955 F.3d 762, --- (9th
7  Cir. 2020), *available at* 2020 U.S. App. LEXIS 10870, at *19-20 (stating that, "[w]hen removal is
8  no longer reasonably foreseeable, § 1231(a)(6) no longer authorizes continued detention").  The
9  Supreme Court reached this conclusion in order to avoid a serious constitutional issue.

10         In the case at bar, Mr. Salgado's likelihood of success on this constitutional/*Zadvydas*
11  claim is low – at least based on the record at this juncture in the proceedings.  It is far from clear
12  that removal is no longer reasonably foreseeable.  There is no indication, for example, that Mexico
13  would not accept him back if he were ordered removed.  Also, the reason why Mr. Salgado has not
14  been removed is because he has appealed the BIA's decision denying him deferral of removal.
15  *See generally Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (9th Cir. 2008) (holding that
16  Mexican national "faces a significant likelihood of removal in the reasonably foreseeable future
17  because the government can repatriate him to Mexico if his pending bid for judicial relief from his
18  administrative final removal order proves unsuccessful"; adding that petitioner's "removal has
19  certainly been delayed by his pursuit of judicial review of his administratively final removal order,
20  [but] he is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in Zadvdyas
21  were"); *Hurtado-Romero v. Sessions*, No. 18-cv-01685-EMC, 2018 U.S. Dist. LEXIS 82796, at *9
22  (N.D. Cal. May 16, 2018) ("In the typical *Zadvydas* case, the government is unable to remove the
23  alien because the country of removal refuses to accept them or to provide travel documents.  That
24  is not the case here.  Plaintiff has not attempted to rebut the government's contention that it
25  regularly effectuates removal to El Salvador.  Indeed, she was removed there in 2016.  In light of
26  the Government's uncontested assertion that removal is feasible, the sole obstacle to removal
27  appears to be the pending appeal of the adverse withholding decision.  That alone does not render
28  removal unforeseeable under *Zadvydas*.").

Finally, there is reason to think that the Ninth Circuit may rule soon on the appeal of the BIA's decision because the appeal was originally set for oral argument in April 2020, *i.e.*, before the court later decided to rule on the appeal based on the papers only; it is therefore currently under submission. Thus, Mr. Salgado has not at this juncture stated a claim (statutory or constitutional) under *Zadvydas*.

The Court acknowledges Mr. Salgado argument that he is likely to suffer irreparable harm in the absence of relief and/or that the balance of equity tips in his favor. However, as noted above, a sliding scale is applied in evaluating a request for a TRO; although the balance of equity may arguably tip in his favor, he has not raised serious questions going to the merits.

3.   Custody Redetermination

Mr. Salgado argues that, even if the Court were not inclined to order his release now, he should still be entitled to a bond hearing as a constitutional matter as a matter of procedural due process. Mr. Salgado acknowledges that this would be his third bond hearing but maintains that such is necessary given the fact that it has been almost a year and a half since his last bond hearing.[1]

The parties agree that, in assessing whether Mr. Salgado should be entitled to a third bond hearing, the Court should apply the procedural due process *Mathews v. Eldridge* factors. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (*Diouf II*), supports application of these factors. *See id.* at 1089-90 (discussing whether "DHS regulations provide sufficient safeguards to protect the liberty interests of § 1231(a)(6) detainees"; indicating that some of the regulations raise serious constitutional concern under a *Mathews v. Eldridge* analysis). So too does district court authority, including a decision from this Court. *See Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 U.S. Dist. LEXIS 127279, at *8 (N.D. Cal. July 30, 2018) (stating that, "[b]ecause Petitioner has not identified any binding Ninth Circuit or Supreme

---

[1] Mr. Salgado is not asking for a bond determination as a statutory matter. This is likely because of *Tejada*, where the Ninth Circuit stated that it found "no support in either *Zadvydas*'s reading of § 1231(a)(6) or the statutory text itself to plausibly construe the provision as requiring *additional* bond hearings every six months." *Tejada*, 2020 U.S. App. LEXIS 10862, at *15 (emphasis in original).

2

1  Court case-law that establishes Petitioner's categorical right to a periodic bond hearing, the Court
2  must conduct an individualized due process analysis pursuant to the conventional *Mathews v.*
3  *Eldridge* factors."); *see also Reyes v. Bonnar*, 362 F. Supp. 3d 762 (N.D. Cal. 2019) (indicating
4  that, even if periodic bond hearings are not statutorily required, they could be constitutionally
5  required; following *Soto* and applying *Mathews v. Eldridge* factors).

6  "The three-part test articulated in *Mathews* requires considering (1) the private interest
7  affected, (2) the government's interest, and (3) the value added by alternative procedural
8  safeguards to what has already been provided in the particular situation before the court." *Soto*,
9  2018 U.S. Dist. LEXIS 127279, at *8; *see also Mathews*, 424 U.S. at 334 (stating that "[d]ue
10 process is flexible and calls for such procedural protections as the particular situation demands").

11 In the instant case, the private interest is important as Mr. Salgado's "freedom from
12 detention is at stake." *Soto*, 2018 U.S. Dist. LEXIS 127279, at *8.  Moreover, the length of Mr.
13 Salgado's detention "has been sufficiently long to establish a strong private interest," *Reyes*, 362
14 F. Supp. 3d at 766 (stating the same where the petitioner had been detained for 22 months, with
15 the last bond hearing being 16 months earlier); *see also Gonzalez v. Bonnar*, No. 18-cv-05321-
16 JSC, 2019 U.S. Dist. LEXIS 12636, at *9 (N.D. Cal. Jan. 25, 2019) (stating that, "[i]n general,
17 '[a]s detention continues past a year, courts become extremely wary of permitting continued
18 custody absent a bond hearing'") – although, as noted above, it is possible that the detention will
19 not continue for a lengthy period of time.  *See id.* at *14 (stating that "both how long the petitioner
20 has been detained and how long the detention is likely to last" should be considered).

21 As for the government interest, Mr. Soto fairly points out – and the government does not
22 dispute – that the interest "at stake in this motion is the ability to detain [Mr. Salgado] *without*
23 *providing him with another bond hearing*, not whether the government may continue to detain
24 him." *Reyes*, 362 F. Supp. 3d at 777 (emphasis in original).  The government also conceded at the
25 hearing that the fiscal or administrative cost of conducting another bond hearing would likely be
26 minimal.  *See id.*

27 Although the two *Mathews* factors above weigh largely in favor of Mr. Soto, the third
28 factor – the value of additional safeguards – does not, at least not at this juncture in the

2

1    proceedings and not based on the record before the Court.  More specifically, is not clear what

2    value there would be to a third bond hearing based on the record presented.  Mr. Salgado has not

3    pointed to any changed circumstances concerning his flight risk since his last bond hearing in

4    December 2018.  There is nothing to indicate, *e.g.*, that he is no longer a flight risk.  *Compare*

5    *Reyes*, 362 F. Supp. 3d at 777 (noting that there were material changes in circumstances since the

6    last bond hearing sixteen months earlier); *see also Soto*, 2018 U.S. Dist. LEXIS 127279, at *11-12

7    (in discussing third factor, noting that three months earlier, petitioner had a bond hearing, and

8    "[t]he only substantive difference between [that] hearing . . . and the hearing she seeks now is a

9    shift in the burden of proof from her to the government"; "in the abstract this could benefit Ms.

10   Soto, [but] she has not submitted any information . . . to suggest that, on the facts of her case, the

11   shift would make any difference to the outcome").  Hence, the value of the additional safeguard of

12   a third bond hearing appears minimal.

13   Taking into account all three *Mathews* factors above, the Court concludes that, at this

14   juncture in the proceedings and based on the record before this Court, Mr. Salgado is not likely to

15   prevail on the merits of his due process claim.  Even if the balance of equity tips in Mr. Salgado's

16   favor, a TRO is not appropriate given the low likelihood of success on the merits of his due

17   process claim.

18   In so holding, however, the Court does *not* rule that a petitioner could never have a viable

19   claim for a custody redetermination where the only apparent change in circumstances since the last

20   bond hearing is the passage of time.  As time passes, the length of detention grows, and therefore

21   the petitioner's private interest as well; the petitioner's private interest also grows where detention

22   is likely to continue for a significant period of time.  Accordingly, although the Court is denying

23   Mr. Salgado's request for a custody redetermination at this time, the denial is without prejudice to

24   future consideration should his detention continue.

## II.    CONCLUSION

26   For the foregoing reasons, the Court defers in part and denies in part Mr. Salgado's motion

27   for a TRO.  To the extent the Court has denied the motion, it does so without prejudice.  Because

28   the Court is deferring on the COVID-19 issue, the government's request for a stay is essentially

2

1  moot.

2  In addition to the above, the Court deems the government's response to the TRO motion
3  (including supplemental briefing) its answer/response to the habeas petition, and Mr. Salgado's
4  reply (including supplemental briefing) the traverse.  The Court sets a status conference in this
5  case for August 20, 2020 at 10:30 a.m.

6  **Finally, the Court orders the Clerk of Court to electronically serve a copy of this**
7  **order, as well as a copy of Mr. Salgado's amended petition (Docket No. 12) and his motion**
8  **for a temporary restraining order (Docket No. 13) on the following attorneys, who are**
9  **counsel of record for the petitioners in the** *Zepeda Rivas* **matter:**

- **Martin Schenker, mschenker@cooley.com;**
- **Amalia Wille, amalia@lakinwille.com;**
- **Angelica Salceda, asalceda@aclunc.org;**
- **Bree Ann Bernwanger, bbernwanger@lccrsf.org; and**
- **Francisco Ugarte, francisco.ugarte@sfgov.org.**

**IT IS SO ORDERED**.

Dated: May 18, 2020

_____
EDWARD M. CHEN
United States District Judge